UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.V.E.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>GROSSMONT UNION HIGH SCHOOL DISTRICT,<br><br>　　　　　　　　　　　Defendant. | Case No.: 22-cv-941-RSH-BGS<br><br>**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**<br><br>[ECF Nos. 17, 20] |

　　　Plaintiff E.V.E., by and through her parent and guardian ad litem, Erin V.E. ("Ms. V.E."), appeals an April 1, 2022 decision of an administrative law judge (the "ALJ's Decision") under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1415(i)(2)(A).

1

The ALJ's Decision determined that Defendant Grossmont Union High School District (the "District") had provided Plaintiff with an individualized education program ("IEP") that offered a free appropriate public education ("FAPE") in the least restrictive environment. In this appeal, Plaintiff alleges several errors by the ALJ; the District asks this Court to affirm the ALJ's Decision.

The Parties have fully briefed their positions, and the Court finds the matter suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1).[1] After review of the record and the Parties' written submissions, the Court affirms the ALJ's Decision and enters judgment in favor of the District.

I. BACKGROUND

    A.  Statutory Background

Congress enacted the IDEA to ensure "all children with disabilities have available to them a free appropriate public education"—also called a FAPE—"that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The IDEA imposes a "least restrictive environment requirement," under which states must ensure that "children with disabilities . . . are educated with children who are not disabled" and that "removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).

To this end, the IDEA requires that students "receive a FAPE through the development of an individualized education program," also called an IEP. *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 910 (9th Cir. 2020). "The IEP is the centerpiece of the statute's education delivery system for disabled children." *Endrew F. ex rel. Joseph F. v.*

---

[1]    The IDEA provides the court "shall hear additional evidence at the request of a party," *see* 20 U.S.C. § 1415(e)(2), but here neither party has requested a hearing.

*Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017) (quotations omitted). Every IEP must include statements about "the child's present levels of academic achievement" and "measurable annual goals" as well as an explanation of "the extent, if any, to which the child will not participate with nondisabled children in the regular class." 20 U.S.C. § 1414(d)(1)(A).

An "IEP team" composed of parents, teachers, and experts develops the IEP. 20 U.S.C. § 1414(d)(1)(B). When parents and educators disagree about a child's IEP, the IDEA provides for informal dispute resolution procedures and mediation. *Id.* §§ 1415(e), (f)(1)(B)(i). If these measures fail, the aggrieved party is entitled to a "due process hearing" before the State or local educational agency. 20 U.S.C. § 1415(f).

Under California Education Code § 56346(f), when a parent does not consent to a component of a district's proposed IEP, and the district determines this component is necessary to provide a FAPE, "a due process hearing shall be initiated."[2] This provision "compels a school district to initiate a due process hearing when the school district and the parents reach an impasse." *I.R. ex rel. E.N. v. Los Angeles Unified Sch. Dist.*, 805 F.3d 1164, 1169 (9th Cir. 2015). "[A]t the conclusion of the administrative process, the losing party may seek redress in state or federal court." *Endrew F. ex rel. Joseph F.*, 580 U.S. at 392.

### B. Factual Background

Plaintiff is an eighteen-year-old student with a diagnosis of generalized anxiety that qualifies her for special education services under IDEA. AR 864.[3] She matriculated to

---

[2] A party will "file for due process" to request a due process hearing. At this hearing, "all parties may be accompanied by counsel, and may present evidence and confront, cross-examine, and compel the attendance of witnesses." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 54 (2005); 20 U.S.C. § 1415(h)(1)-(2).

[3] All citations to the administrative record ("AR") refer to the ECF-generated page numbers of the administrative record, filed as ECF 16.

Grossmont Unified School District in the fall of 2019 when she began attending ninth grade. *Id.* at 863-64. In her transition to high school, Plaintiff's IEP team agreed on an IEP to attend Helix Charter ("Helix"), a school that offered some, but not all, special education services. *Id.* at 913.

Because of her anxiety, Plaintiff struggled to attend school, and her academic performance declined. *Id.* at 187. During the first grading period, she received failing grades in 3 out of 5 of her classes and was marked "absent" for 123 out of 236 periods of the school year. *Id.* at 200. Consistent with its IDEA obligations, her IEP team met regularly to discuss modifications and goals for her school performance.

In October 2019, Plaintiff's team reviewed her IEP and agreed to increase the amount of specialized academic instruction she would receive through a study skills class every other day, but her performance did not improve. *Id.*

In its February 2020 IEP meeting, Plaintiff's team agreed to increase the frequency of her specialized study skills class to daily meetings. *Id.* at 220. The District proposed that she undergo a mental health evaluation because her anxiety was preventing her from attending school. *Id.* at 222.

In August 2020, the IEP team reviewed Plaintiff's mental health evaluation and school records.[4] *Id.* at 266. The team discussed moving her from Helix to another educational institution, MERIT Academy ("MERIT"), which offered a more structured learning environment for students with disabilities. *Id.* At MERIT, a school of only 65 students, all students have an IEP and receive special education and integrated therapeutic support throughout the day. *Id.* at 798. As at Helix, MERIT students are eligible to receive a high school diploma. *Id.* at 807. At this time, Ms. V.E. agreed to consider the relocation. *Id.*

---

[4] At this point, Helix and all other schools in the District were providing distance learning due to the COVID-19 pandemic.

4

The IEP team met again in October 2020, and they decided Plaintiff would remain at Helix, but that her graduation date would be delayed because of her absences. *Id.* at 293.

In the February 2021 IEP meeting, the District's representative again discussed moving Plaintiff to MERIT, which at that point was meeting in-person and could provide further support. *Id.* at 298-99. Ms. V.E. asked to tour the MERIT campus. *Id.* After the IEP meeting, she and Plaintiff went to the campus, but were unable to conduct a tour because of Plaintiff's anxiety. *Id.* at 840.

In September 2021, the District declined Ms. V.E.'s request to enroll Plaintiff in Helix's virtual academy because it provided less support than in-person learning. *Id.* at 331. The District again proposed that Plaintiff be enrolled at MERIT. *Id.*

On October 6, 2021, the team held its annual IEP meeting. At this time, Plaintiff had earned 25 out of the 220 credits required to graduate and had been absent from 90% of the 2021 school year periods. AR 490, 498. Just minutes into the meeting, the only general education teacher in attendance, Mr. Patterson, asked to be excused to teach his class. *Id.* at 483-84. Ms. V.E. agreed that it would be acceptable for Mr. Patterson to leave, and he was excused. *Id.* at 484. During the meeting, Ms. V.E. insisted that Plaintiff was not getting the support that was supposed to be available to her at Helix, and that teachers were unaware of her required accommodations. *Id.* at 493. She repeatedly asked what other options within the District were available to Plaintiff. *Id.* at 487-88, 509.

The District presented its proposed IEP, that Plaintiff attend MERIT where she would be in special education 100% of the time. *Id.* at 509. Ms. V.E. opposed this placement and again requested a list of other options. *Id.* At the end of the meeting and after excusing the other members of the team, the District administrators offered to answer Ms. V.E.'s questions. *Id.* at 512.

C.  **Procedural Background**

On October 14, 2021, the District sent a letter confirming its offer of a FAPE through placement at MERIT and documenting Ms. V.E.'s parental objection. *Id.* at 406-07. This

letter constituted notice of the District's intent to seek a due process hearing under California Education Code § 56346(f).

On October 18, 2021, the District submitted a request for a hearing to the California Office of Administrative Hearings pursuant to 20 U.S.C. § 1415(b)(6). *Id.* at 6. Maintaining it had complied with the IDEA by offering placement at MERIT, the District sought to implement the IEP absent parental consent. *Id.* at 7. It explained that based on her behaviors and assessments, Plaintiff "needs a more restrictive placement" and MERIT "is designed to provide Special Education students with a high degree of social, emotional, and behavioral support and structure throughout each school day." *Id.* at 11. Plaintiff responded that "the District's offer of MERIT, a self-contained special day program, is too restrictive and other less restrictive placement alternatives exist." *Id.* at 75-76.

On April 1, 2022, after a three-day hearing, the ALJ ordered that the District's proposed IEP—that Plaintiff attend MERIT—constituted a FAPE in the least restrictive environment consistent with the IDEA. *Id.* at 569. The ALJ used the Ninth Circuit's four-factor test to determine whether a school district has complied with the least restrictive environment requirement. This test considers (1) the academic benefits a child receives from placement in a regular classroom versus a special education classroom; (2) the non-academic benefits a child derives from being educated in a regular classroom; (3) the potential negative effects the child's presence in a regular classroom may have on other children; and (4) the costs to the school district to provide supplementary aids in a regular classroom. *See Sacramento City Unified School District v. Rachel H.*, 14 F.3d 1398, 1404 (9th Cir. 1994).

Under the first factor—the educational benefits of full-time placement in a regular classroom—the ALJ considered testimony from administrators about the appropriateness of MERIT, including that it offered smaller classes, therapeutic support, and spaces where students could de-escalate. *Id.* at 599. The ALJ also found that Ms. V.E. had "obstruct[ed]" the October 2021 IEP meeting by "interrupting and asking off-topic questions" which she

then "refus[ed] to explain" and that she offered "no testimony that negated the appropriateness of Grossmont's offer of placement." *Id.* at 560. Under the second factor—whether the nonacademic benefits of the present placement are outweighed by a more restrictive placement—the ALJ found Plaintiff's history of social isolation at Helix did not overcome the therapeutic benefits of MERIT. *Id.* at 561. Third, the ALJ found no evidence that Plaintiff had a negative influence on her peers, but Plaintiff's lack of engagement with her teachers and peers favored a more restrictive placement. *Id*. Fourth, there was no issue of cost, rendering the final factor neutral. *Id.*

The ALJ also concluded the District did not violate the IDEA's procedures by "predetermining" the IEP—that is, by not approaching the IEP meeting with a mind open to a parent's suggestions—or by preventing Ms. V.E. from meaningfully participating in the process. *Id.* at 562-63. The ALJ found that there was no evidence that any IEP team member had been instructed as to where Plaintiff should be placed prior to the meetings in September and October 2021. *Id.* at 565. Although Ms. V.E. disagreed with the placement, the District had offered Plaintiff the chance to tour MERIT and had considered Ms. V.E.'s concerns and proposals in multiple IEP meetings since August 2020. *Id.* at 565-66. Evidence that the District had delayed placing Plaintiff at MERIT before Ms. V.E. had the opportunity to tour it supported the ALJ's conclusion that the IEP team had worked to address Ms. V.E.'s questions and concerns. *Id.* at 565.

Finally, the ALJ concluded the IEP constituted a "clear, specific offer of placement which Parent understood and had sufficient information to evaluate." *Id.* at 566. The ALJ noted that the October 2021 IEP made a "clerical error" when it stated 100% of Plaintiff's day would be in regular class, but "[t]his error was corrected in a different section of the IEP." *Id.* at 34. Rejecting Plaintiff's claim that the IEP failed to specify whether services will be provided in group or individual settings, the ALJ explained that this type of specific methodology is "left to the discretion of the school districts." *Id.* at 49-50.

On June 27, 2022, Plaintiff filed this action against the District as authorized by 20 U.S.C. § 1415(i)(2)(A). *See* ECF 1. This Court issued a scheduling order setting deadlines for Plaintiff's motion for judgment on appeal, and the District's opposition and cross-motion for judgment on appeal. *See* ECF 10. On April 24, 2023 and May 24, 2023, the parties filed their merits briefs. *See* ECF 17, 20.

## II.  STANDARD OF REVIEW

The IDEA stipulates that this Court shall "receive the records of the administrative proceedings" and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. § 1415(i)(2). Thus "[j]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993).

This Court reviews "whether the [District] has provided a FAPE de novo," but it accords deference to the ALJ's factual findings "where they are thorough and careful." *M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017). Neither the hearing duration, the ALJ's active involvement, nor the length of the ALJ's opinion are dispositive of an ALJ's thoroughness and care. *Id.* Instead, this Court "must actually examine the record to determine whether it supports the ALJ's opinion." *Id.* at n.1.

In IDEA cases, "the district court essentially conduct[s] a bench trial based on a stipulated record." *Ojai Unified Sch. Dist.*, 4 F.3d at 1472. "Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Capistrano Unified Sch. Dist. v.*

*Wartenberg by & Through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).[5] Thus, this Court treats the motions as an appeal of an administrative decision and will "read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations." *Id.*; *see also E.M. v. Poway Unified Sch. Dist.*, No. 19CV689 MJ MSB, 2020 WL 229991, at *8 (S.D. Cal. Jan. 15, 2020) (treating cross-motions for summary judgment as an administrative decision appeal).

### III.  ANALYSIS

Plaintiff claims the ALJ wrongly decided three procedural issues in the IEP process. First, she contends the District impermissibly predetermined the October 2021 IEP and prevented Ms. V.E. from meaningfully participating. Second, she argues the same IEP is procedurally invalid because a general education teacher did not participate in the entire IEP team meeting. Third, she claims the IEP is procedurally flawed because it did not constitute a clear, written offer. Plaintiff does not challenge the ALJ's substantive finding that placement at MERIT constitutes a FAPE in the least restrictive environment; accordingly, this Court does not reach that issue.[6]

---

[5] Plaintiff entitles her filing "Memorandum and Points of Authorities in Support of Plaintiff's Motion for Summary Judgment," ECF 17, while the District entitles its filing "Opposition to Plaintiff's Motion for Summary Judgment," ECF 20. Technically speaking, neither side has filed a properly noticed motion; but neither party has challenged the technical adequacy of the other party's submissions. Consistent with the Court's scheduling order, the relief requested by the Parties, and *Wartenberg*, *supra*, the Court treats these filings as merits briefs seeking judgment on appeal of the ALJ's decision.

[6] The District suggests the issue of mootness, but does not develop an argument or cite legal support. *See* ECF 20 at 1 (arguing that "[t]here is no longer a case in controversy about the October 6, 2021 IEP" because a school year has passed and the record does not reflect subsequent changes to the IEP). The Court concludes that Plaintiff's appeal is not moot; challenges to an out-of-date IEP can "present[] a live controversy[] because the conduct giving rise to the suit is capable of repetition, yet evading review." *Rachel H.*, 14 F.3d at 1403 (quotations omitted).

Not all procedural violations result in the denial of a free appropriate public education. Plaintiff must show any procedural violation "result[ed] in the loss of an educational opportunity, seriously infringe[d] the parents' opportunity to participate in the IEP formulation process or cause[d] a deprivation of educational benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010); 20 U.S.C. § 1415(f)(3)(E)(ii).

### A.  Whether the District Impermissibly Predetermined the IEP

Plaintiff asserts that the ALJ erred by finding that the District had not "predetermined," before the October 2021 IEP meeting, that the District would transition Plaintiff to MERIT. ECF 17 at 17. As evidence, Plaintiff asserts that the district failed to answer Ms. V.E.'s questions about alternative placements during the meeting. *Id.* She argues the District administrator's offer to answer questions after the meeting was insufficient because, at that point, the educators and mental health specialists were gone. *Id.* at 18. Plaintiff further contends that the ALJ impermissibly considered the fact that the IEP team had discussed MERIT in prior IEP meetings, because these meetings were "not within the OAH's scope of consideration." *Id.* at 19. Plaintiff concludes the District's predetermined decision prevented Ms. V.E.'s meaningful participation in the IEP, a redressable procedural violation under the IDEA. *Id; Mercer*, 592 F.3d at 953.

The District responds that its offer of placement at MERIT was based on Plaintiff's most recent assessments and discussed at several meetings leading up to October 2021. ECF 20 at 12. It states that the decision to recommend placement at MERIT was developed over the course of nearly two school years with frequent discussions involving Ms. V.E. and was based on Plaintiff's low attendance, which had not improved despite modifications to the IEP. *Id.* The District also contends that it did engage with Ms. V.E. on the continuum of placement options and points to the September 2021 meeting in which the team discussed participation in Helix Virtual Academy and determined it would not provide Plaintiff with a FAPE because she required more support. *Id.* at 13.

"A school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement." *K.D. ex rel. C.L. v. Dep't of Educ., Hawaii*, 665 F.3d 1110, 1123 (9th Cir. 2011). In other words, "there must be evidence the state has an open mind and might possibly be swayed by the parents' opinions and support for the IEP provisions they believe are necessary for their child." *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1188 (11th Cir. 2014). However, a parent's "right to provide meaningful input is simply not the right to dictate an outcome." *White ex rel. White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 380 (5th Cir. 2003).

Plaintiff provides no evidence that the District predetermined her placement at MERIT before the October 2021 IEP meeting or that any members of the placement team were not entering the IEP meetings with an open mind. Plaintiff argues the District's failure to answer her questions about alternative placement during the October 2021 IEP meeting is evidence of predetermination. ECF 17 at 17-18. But the record demonstrates the District offered to answer any questions related to Plaintiff, discussed her most recent progress, and presented its IEP, which contained the District's recommendation of MERIT. AR 486-88. Ms. V.E. rejected the District's recommendation but did not suggest an alternative placement. *Id.* at 509.

Nor did the ALJ err in considering the District's two-year record of attempting to accommodate Plaintiff at Helix. This history suggests that the District's recommendation was the result of careful consideration and discussion within the IEP team, which included Ms. V.E., as to what would constitute a FAPE. Although Plaintiff disputes her placement at MERIT, "[t]his reflects a difference of educational philosophy with [the District], not a denial of opportunity to participate." *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1133 (9th Cir. 2003). Because a preponderance of the evidence supports the ALJ's determination that October 2021 IEP was not predetermined, Plaintiff's procedural challenge on that ground fails.

### B. Whether dismissing the general education teacher from the IEP meeting is a redressable procedural violation

Plaintiff next disputes the ALJ's finding that dismissing the general education teacher from the October 2021 IEP meeting did not deny Plaintiff a FAPE. ECF 17 at 19. Under the IDEA, a student's IEP team must include "not less than 1 regular education teacher" of the student. 20 U.S.C. § 1414(d)(1)(B)(ii). "[T]he requirement that [at] least one regular education teacher be included on an IEP team, if the student may be participating in a regular classroom, is mandatory—not discretionary." *L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 643 (9th Cir. 2005).

The IDEA provides:

> A member of the IEP team may be excused from attending an IEP meeting, in whole or in part, when the meeting involves a modification to or discussion of the member's area of the curriculum or related services, if—
>
> (I) the parent and the local educational agency consent to the excusal; and
>
> (II) the member submits, in writing to the parent and the IEP Team, input into the development of the IEP prior to the meeting.

20 U.S.C. § 1414. IDEA does not specifically address the situation where a team member leaves a meeting early with the oral agreement of the parent. Nonetheless, the ALJ concluded that this was a procedural violation because Ms. V.E. did not provide written consent. AR 540.

The Court must determine whether such procedural violation resulted in the loss of educational opportunity or seriously infringed Ms. V.E.'s opportunity to participate in the IEP process. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009). Plaintiff argues that Mr. Patterson's absence "adversely impacted" Ms. V.E.'s ability to participate in the IEP development because she "was denied the opportunity to hear from and engage with the general education teacher regarding the development of the IEP." ECF

17 at 20. She disputes the ALJ's conclusion that the IEP team had received all the required information from Mr. Patterson because he never submitted written input or testified at the ALJ hearing. *Id.* at 21-22.

This Court finds that Mr. Patterson's absence did not prevent the IEP team from carefully considering general education placement, where the team had attempted to accommodate Plaintiff in general education classes since the fall of 2019. *Cf. R.G. v. New York City Dep't of Educ.*, 980 F. Supp. 2d 345, 362 (E.D.N.Y. 2013) (general education teacher's absence and the "record in this case unambiguously demonstrates that a mainstream placement did not receive fair consideration, as required by both federal and state law"). A procedural violation of an absent IEP member results in the denial of an educational opportunity where there is a "strong likelihood that alternative educational possibilities for the student would have been considered" had the member been present. *Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1047 (9th Cir. 2013) (quotations omitted). When Mr. Patterson asked to be excused, he stated, "I don't have any information. . . I never met [Plaintiff] . . . she's never been in class. So, I don't have much to report out other than uh, the fact that I've—I've never met or seen her." AR 483-84. At that time, Ms. V.E. indicated she had no questions for him. *Id.* at 484.

This Court concludes Mr. Patterson did not have personal knowledge about Plaintiff that would have aided in creating an IEP that is "appropriately tailored to [her] abilities and needs." *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 649 (9th Cir. 2005). Although "any regular education teacher would have contributed his or her knowledge of the ability of a disabled student to benefit from being placed in a regular classroom," *see M.L.*, 394 F.3d at 648, the record below indicates that Plaintiff's IEP team had considered the benefits of general education during each of its 2019, 2020, and 2021 meetings. Although the District may have committed a procedural violation in dismissing Mr. Patterson, a preponderance of the evidence supports the ALJ's conclusion that this violation did not deny a FAPE. *See Lessard v. Wilton-Lyndeborough Co-op. Sch. Dist.*, No. CIV 06-CV-423-JD, 2008 WL

3843913, at *4 (D.N.H. Aug. 14, 2008), aff'd sub nom. *Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267 (1st Cir. 2010) (although plaintiffs "provide evidence that team members did arrive late and leave early, they have not shown that attendance had any impact on [the student's] right to receive a FAPE").

### C. Whether the IEP constituted a clear, written offer

Finally, Plaintiff argues the text of the October 2021 IEP is "fatally unclear." ECF 17 at 23. She asserts she raised concerns before the ALJ about various inconsistencies and a lack of precision in the IEP, and that the ALJ only addressed one of these concerns. *Id.*

The ALJ addressed at length the legal adequacy of the IEP, including the IEP's clarity. AR 542-567. The ALJ acknowledged that one set of IEP forms contained an error, but concluded it was clerical. AR 551. Specifically, one page of the IEP form stated that Plaintiff will spend "100%" of her time "in the regular class[room]." *Id.* at 395. The form's other pages, however, included a specific breakdown of the number of minutes of individual counseling, specialized academic instruction, behavior intervention services, and related services Plaintiff would receive at MERIT. *Id.* at 397-98. And during the October 2021 IEP meeting and in its follow-up letter to Ms. V.E., the District confirmed that Plaintiff would receive these specialized services and would not be in the regular classroom. *Id.* at 508-09; 406-07. This Court agrees with the ALJ that this error was clerical and did not deny Plaintiff a FAPE. *See M.H. v. N.Y.C. Dep't of Educ.*, No. 10-CV-1042 (RJH), 2011 WL 609880, at *11 (S.D.N.Y. Feb. 16, 2011) (to hold an IEP inappropriate simply because of a clerical error omitting a recommendation, which appeared in the meeting minutes and was reflected in the conduct of the parties, would "exalt form over substance" (quotations omitted)).

The IEP contained a second, similar clerical error: Although the IEP included an offer of 1,760 minutes of weekly specialized academic instruction, 1,760 minutes of weekly behavior intervention services, 120 minutes of monthly individual counseling services, 30 minutes of weekly group counseling and guidance, and 30 minutes of monthly

parent counseling (AR 359), another page in the document listed zero minutes for each of these services (AR 400). Reading the document as a whole, and in light of the discussion at the October 2021 IEP meeting, it was clear that the District was indeed offering these services.

Plaintiff faults the ALJ for failing to address the lack of clarity in "how the [specialized academic instruction] services were offered." ECF No. 17 at 24. However, the ALJ's Decision expressly addressed Plaintiff's argument that "the offer of specialized academic instruction was unclear because it provided it would be delivered both individually and in a group setting but did not delineate how much time was delineated for each." AR 566. The ALJ accurately stated that the methodology of delivery of such services is left to a school district's expertise and discretion. *See Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1056 (9th Cir. 2022) ("[A] district is not required to use the methodology a parent prefers when providing special-education services for a child."); *see also Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982) ("[O]nce a court determines that the requirements of the [IDEA] have been met, questions of methodology are for resolution by the States.").

The ALJ concluded that "the IEP provided Parent sufficiently clear details as to the proposed placement and services such that she could reasonably be expected to understand it and decide whether to accept the offer. Although parent did not accept the IEP offer of placement, this was based on her dissatisfaction with the offer, not confusion about the offer." AR 566. Plaintiff does not claim that she was unable to understand or evaluate the offer, and she cites no authority establishing that the issues she raises amount to denial of a FAPE. The Court concludes that a preponderance of the evidence supports the ALJ's determination that the IEP was adequate and did not deny Plaintiff a FAPE.

## IV. CONCLUSION

For the reasons above, this Court concludes as follows:

1. The ALJ's Decision is **AFFIRMED** and judgment is entered for the District.

| | | |
|---|---|---|
| 1 | 2. | Plaintiff's motion for summary judgment (ECF No. 17) is **DENIED**. |
| 2 | 3. | Plaintiff's request for reimbursement and attorney's fees (ECF No. 1 at 8) is |

**DENIED**.

The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated: August 31, 2023

_____
Hon. Robert S. Huie
United States District Judge